UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **GLEN TORRES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:24-cv-01680-GCS** |
| | ) | |
| **LLOYD HANNA and ANTHONY WILLS,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

Plaintiff Glen Torres, an inmate in the Illinois Department of Corrections ("IDOC") currently confined at Pontiac Correctional Center, filed this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitution rights while he was housed at Menard Correctional Center. (Doc. 2).[1] Defendants Lloyd Hanna and Anthony Wills ("Defendants") argue that summary judgment should be granted in their favor because Torres failed to exhaust his administrative remedies prior to filing suit. (Doc. 32). For the reasons explained below, the Court **DENIES** Defendants' Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies.

**PROCEDURAL BACKGROUND**

Torres filed his Complaint in this case on July 8, 2024. (Doc. 2). On November 11,

[1] This case was severed from *Torres v. McLanahan et al.*, 3:24-cv-01455-MAB, on July 8, 2024. (Doc. 1). The same complaint forms the basis for both suits, but as it pertains to this case it includes only the allegations against Defendants Hanna and Wills.

2024, the Court completed a preliminary review of Torres's Complaint pursuant to 28 U.S.C. § 1915A. (Doc. 11). Based on the allegations in the Amended Complaint, the Court allowed Torres to proceed on the following count relevant to Hanna and Wills:

> **Count 1:** **Eighth Amendment deliberate indifference claim against L. Hanna and Anthony Wills for failing to honor Plaintiff's documented allergy and continuing to serve him seafood.**

*Id.* at p. 2. Defendant moved for summary judgment because Torres failed to exhaust his administrative remedies against them. (Doc. 32). Torres filed a response on November 10, 2025. (Doc. 40). The Court held a hearing on the Motion for Summary Judgment on April 15, 2026. (Doc. 47). The motion is thus ripe for adjudication.

## FACTUAL BACKGROUND

Torres submitted six grievances that relate to this lawsuit. (Doc. 32, p. 2; Doc. 40, p. 1-2; Doc. 49, p. 22). The Court will briefly summarize these grievances:

***1. Grievance No. K4-0123-0695***

Torres submitted this grievance on October 9, 2023. Plaintiff complained that he had "constantly informed medical personnel [sic] & dietary" that Plaintiff was allergic to fish, but that he was served food trays that included fish. (Doc. 32-2, p. 55). A Grievance Officer ("G/O") recommended that this grievance be denied on January 1, 2024. *Id.* at p. 54. The Chief Administrative Officer ("CAO") concurred on January 31, 2024. The G/O noted that she contacted Defendant Hanna, who said that Torres had a therapeutic diet order on record, but no formal diagnosis from a physician. *Id*. Defendant Hanna further noted that fish was not frequently served. *Id*. Torres appealed the denial of his grievance to the Administrative Review Board ("ARB") on February 5, 2024. (Doc. 32-3, p. 7). The

ARB denied the grievance on the merits. *Id*. at p. 6.

***2. Grievance No. K4-1123-1729***

Torres submitted this grievance on November 24, 2023. Torres reiterated he needed a substitute tray due to his fish allergy but was served fish trays and was told he "wouldn't eat" if he didn't take it. (Doc. 32-2, p. 63). A G/O reviewed the grievance and contacted Defendant Hanna, who stated the allergy was self-reported. *Id.* at p. 363. The G/O also noted that, according to Torres's medical records, there was no medical reason to remove fish from his trays, as lab tests from May 2024 indicated "[n]o significant level" of fish allergy. *Id.* at p. 364. The G/O recommended that this grievance be denied on September 11, 2024. *Id.* at p. 363. The CAO concurred on September 16, 2024. The ARB never received an appeal of this grievance, but Torres maintains that he mailed an appeal through the prison mail system. (Doc. 32-4, p. 4).

***3. Grievance No. K4-0224-0743***

Torres submitted this grievance on January 12, 2024. Torres again asserted that he was served fish instead of a special diet tray, even though his allergy is "documented." (Doc. 32-2, p. 42). In regard to this grievance, on February 20, 2024, a Counselor approved substitute diet trays and extended Torres's therapeutic diet order for the year. (Doc. 32-2, p. 32). On May 3, 2024, the G/O recommended denying the grievance due to Torres's failure to send this to the G/O within 14 days of the Counselor's response; the G/O also noted that it duplicates grievance K4-0123-0695. *Id*. at p. 24. The CAO concurred on May 14, 2024. (Doc. 32-6, p. 1). The ARB never received an appeal of this grievance, but Torres maintains that he mailed an appeal through the prison mail system. (Doc. 32-4, p. 4).

***4. Grievance No. K4-0224-0742***

Torres submitted this grievance on February 2, 2024. Torres asserted that, once again, he was served fish despite an allergy to fish and a corresponding diet order. (Doc. 32-2, p. 39). On February 20, 2024, the Counselor refused to conduct a "staff conduct investigation," and declined to review the grievance order as duplicative of prior grievances and therefore moot. *Id.* at p. 41. The G/O recommended that the grievance be denied on May 17, 2024, because it was outside the time frame under AD 04.02.114. *Id.* at p. 95. The CAO concurred on May 28, 2024. *Id.* The ARB never received an appeal of this grievance, but Torres maintains that he mailed an appeal through the prison mail system. (Doc. 32-4, p. 4).

***5. Grievance No. K4-0224-0744***

Torres submitted this grievance on February 2, 2024. Torres again complained that he was not receiving his therapeutic diet trays as required by an order Defendant Willis entered in Torres's file. (Doc. 32-2, p. 36-37). On February 20, 2024, the Counselor declined to review the grievance and indicated it was a duplicate grievance on the same issue of a fish allergy and therefore was moot. (Doc. 32-2, p. 38). The ARB never received an appeal of this grievance, but Torres maintains that he mailed an appeal through the prison mail system. (*See* Doc. 32-4, p. 4; *See also* Doc. 32-6, p. 1).

***6. Grievance No. K4-0324-1368***

Torres submitted this grievance on February 16, 2024. In this grievance, Torres again complained that he was being retaliated against and served fish despite his allergy and the dietary order in his file. (Doc. 32-2, p. 82). On April 3, 2024, a counselor reviewed

the issue and indicated this should no longer be a problem because Torres had been transferred to a vegan diet and the fish allergy had not been verified. *Id.* at p. 84. The G/O recommended that this grievance be denied because it was resolved by prior review on June 4, 2024. *Id.* The CAO concurred on June 24, 2024. *Id*. Torres appealed the denial of his grievance to the ARB on February 23, 2024. (Doc. 32-3, p. 1). Torres filed his complaint prior to receiving a response to his appeal.

## LEGAL STANDARDS

Summary judgment is proper when a moving party cannot establish the presence of a genuine dispute of material fact. *See* FED. R. CIV. PROC. 56(a). To survive a motion for summary judgment, the non-moving party must provide admissible evidence which would allow a reasonable jury to find in his or her favor. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). Generally, the Court's role is to determine whether a genuine issue of material fact exists rather than evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter when determining the outcome for a motion for summary judgment. *See National Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

However, in *Pavey v. Conley*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. 544 F.3d 739, 740-741 (7th Cir. 2008). Therefore, it is left to the Court to determine whether an inmate has exhausted his or her remedies when the affirmative defense of non-exhaustion is raised. If the court finds the inmate failed to exhaust administrative remedies, then the inmate is given the

opportunity to exhaust should time still permit or if the failure to exhaust was innocent. *Id.* at 742. If the court determines the failure to exhaust was the inmate's fault, then the case is over. *Id*.

Under the Prison Litigation Reform Act ("PLRA"), which governs lawsuits filed by inmates, "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This coincides with the PLRA's statutory purpose of "afford[ing] correction officials [the] time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1161 (7th Cir. 2012). It affords prison administrators an opportunity to fix the problem, reduce damages, and shed light on the factual disputes that may arise in litigation. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir. 2002).

Inmates must follow their prison's administrative rules when attempting to exhaust their administrative remedies under the PLRA. *See Pozo*, 286 F.3d at 1023. Torres is an inmate in the IDOC and is required to follow the regulations contained in the IDOC's Grievance Procedures to properly exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq.* The Seventh Circuit requires strict adherence to a prison's grievance procedures to satisfy the requirements for exhaustion under the PLRA. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). The exhaustion requirement cannot be satisfied if an inmate files untimely or procedurally defective grievances. *See Woodford*, 548 U.S. at 83-84.

Additionally, an inmate must correctly complete all the steps outlined in the grievance procedures and is barred from filing suit prior to any step being completed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004); 42 U.S.C. § 1997e(a). If an inmate fails to complete all the steps correctly to exhaust his claim, then "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. However, inmates are not required to exhaust administrative remedies that are unavailable to them which can occur if, "prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809.

The IDOC Grievance Procedures require that an inmate first file a grievance with a counselor at their correctional institution within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The Grievance must include "factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." *See* 20 ILL. ADMIN. CODE § 504.810(c). If the inmate is unsatisfied with the counselor's response, then the inmate can submit a formal grievance to the prison's grievance officer. *Id* at (a)-(b). The grievance officer must then review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). Within 60 days of the receipt of the grievance, the grievance officer must report their findings and recommendations in writing to the Chief Administrative Officer ("CAO"). *See* 20 ILL. ADMIN. CODE § 504.830(e). The CAO will then review the findings and recommendations and offer a written decision to the inmate. *Id*. The inmate can appeal the CAO's decision

to the ARB within thirty days. *See* 20 ILL. ADMIN. CODE § 504.850(a). To do this correctly, the inmate is required to attach copies of the grievance officers report and the CAO's decision to his appeal. *Id*. The ARB then submits its findings and recommendations to the Director who will issue the IDOC's final decision within six months. *See* 20 ILL. ADMIN. CODE § 504.850(d)-(e).

## DISCUSSION

Defendants are not entitled to summary judgment for two independent reasons. First, Torres exhausted Grievance No. K4-0123-0695 before he filed suit. That grievance exhausted his claim against Hanna and Wills even though it did not name them. Second, and in the alternative, the record permits an inference that Menard staff interfered with Torres' later grievances and appeals. That interference made the grievance process unavailable to him.

### A. Grievance No. K4-0123-0695 Exhausted Torres's Claim Against Hanna and Wills.

Defendants argue that Torres failed to exhaust his administrative remedies as required by the PLRA because his grievances did not identify them specifically or complain about their specific conduct. (Doc. 32, p. 10). However, grievance No. K4-0123-0695 exhausted Count 1. The grievance does not name Hanna or Wills. (Doc. 32-2, p. 55). However, it described the problem at the center of this suit, *i.e.*, Torres's alleged fish allergy. *Id*. Prison officials investigated that problem, Torres appealed the issue, and every level of review decided the grievance on the merits. (Doc. 32-2, p. 54; Doc. 32-3, p. 7). The PLRA requires nothing more.

A grievance serves its purpose when it alerts the prison to a problem and gives the prison a chance to fix it. *See Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). The grievance process exists to benefit the prison. It lets the prison address complaints before suit, resolve some complaints without litigation, and build a record for the complaints that reach court. *See Jones v. Bock*, 549 U.S. 199, 219 (2007). By contrast, notice to officials who might later be sued "has not been thought to be one of the leading purposes" of exhaustion. *Id*. Finally, an inmate need not file successive grievances about an ongoing condition. *See Turley*, 729 F.3d at 650.

Illinois requires an inmate to name each person involved in his complaint. If he does not know a name, he must describe the person as fully as possible. 20 ILL. ADMIN. CODE § 504.810(c). A missing name, however, does not defeat exhaustion when the prison decides the grievance on the merits and can tell who is responsible. *See Maddox v. Love*, 655 F.3d 709, 721–722 (7th Cir. 2011). In *Maddox*, the inmate grieved the cancellation of religious services but did not name or describe the chaplain and wardens he later sued. *Id*. at 714, 721. Officials denied the grievance on the merits at every stage and never told him it was deficient. *Id*. at p. 721. A procedural shortcoming defeats exhaustion "only if prison administrators explicitly relied on that shortcoming." *Id*. at p. 722. Moreover, administrators plainly knew who made the decision. The chaplain responded to the grievance, and a warden denied it. *Id*. The grievance therefore "served its function of alerting the state and inviting corrective action," and the missing names were "a mere technical defect." *Id*.

Torres's grievance is like the grievance in *Maddox*. On October 9, 2023, Torres

grieved that he had repeatedly told medical and dietary staff about his fish allergy, yet he continued to receive trays with fish. (Doc. 32-2, p. 55). That is the conduct at issue in Count 1: Hanna and Wills failed to honor Torres's documented allergy and kept serving him seafood. (Doc. 11, p. 2). The Grievance Officer did not reject the grievance for failing to name anyone. (Doc. 32-2, p. 54). Instead, she investigated and contacted Hanna, who reported that Torres had a therapeutic diet order on record but no physician's diagnosis, and that the kitchen served fish infrequently. *Id*. The Grievance Officer recommended denial, and the CAO concurred on January 31, 2024. *Id*. Torres appealed to the ARB on February 5, 2024, and the ARB denied the grievance on the merits on April 23, 2024. (Doc. 32-3, p. 6-7). No reviewer at any level cited a procedural defect.

Moreover, the record does not demonstrate the type of failure to provide information that might preclude exhaustion. *See, e.g.*, *Olden v. Jackson*, No. 23-1570, 2024 WL 4601042, *3 (7th Cir. Oct. 29, 2024) (noting that word "Telepsyci," without any other descriptors, not enough to give prison opportunity to address complaint about doctor). Torres directed his grievance at "dietary," and the Grievance Officer went straight to Hanna. The prison therefore identified Hanna, as a dietary manager, from the grievance and gave him the chance to respond before Torres filed suit. (Doc. 32-3, p. 7). It "belies reason" to suggest that administrators did not know who was responsible for that order. *Maddox*, 655 F.3d at 722. The facility and the ARB had full power to fix the problem and it chose to address Torres's grievance on the merits.

Torres's later grievances do not change this result. Torres complained of a continuing condition that the prison kept serving him fish. He did not need to grieve each

tray separately. *See Turley*, 729 F.3d at 650. Accordingly, whatever happened to Torres's later grievances and appeals, Grievance No. K4-0123-0695 exhausted his claim. Torres completed that process on April 23, 2024, when his appeal was denied, before he filed suit on July 8, 2024.

Torres exhausted his administrative remedies against Hanna and Wills through Grievance No. K4-0123-0695. Defendants' motion fails for that reason alone.

**B. The grievance process was unavailable to Torres.**

Furthermore, Defendants are not entitled to summary judgment because the grievance process was available to Torres. Torres, in his response to Defendants' Motion for Summary Judgment, alleged facts concerning interference with the grievances he filed. He alleged that:

- He forwarded Grievance No. K4-0224-0743 to a G/O in accordance with prison rules, but the grievance was delayed after it he put it into the prison mail system and it was denied as untimely;
- He appealed Grievance No. K-0224-0742 to the ARB, but the grievance was interfered with after he put it into the prison mail system; Interference at and from Menard caused Torres to miss grievance deadlines;
- Employees at Menard threw away or destroyed grievances and appeals that Torres sent to the ARB.

(Doc. 40, p. 4, 6). The record in this case offers support for Torres's claims. The Court has identified three of Torres's grievances alleging interference with grievances and/or the prison mail system. (Doc. 32-2, p. 61, 63-64, 128-29). Torres filed these grievances on

October 5, 2023, November 24, 2023, and June 27, 2024. *Id.* at p. 61, 63, 128. They allege that corrections officers ("C/Os") at Menard were preventing him from participating in the prison grievance process.

Torres continued to file other grievances alleging interference after filing this lawsuit. (Doc. 32-2, p. 123, 195). In yet another grievance, Torres wrote that he was sending copies to other inmates in case that grievance was thrown away after he put it in the grievance box. *Id.* at p. 7. Torres's grievance record also includes a 2024 affidavit from another inmate who details allegations that a C/O had a history of interfering with grievances and documents mailed to the ARB. *Id*. at p. 139-140. The affidavit also claims that other employees at Menard knew of this alleged misconduct. This evidence, taken together and viewed in the light most favorable to Torres, is more than sufficient to permit an inference that the grievance process was unavailable to him.

More importantly, Defendants have not satisfied their burden of proof to rebut Torres's allegations. Their Motion for Summary Judgment does not address the possibility that administrative remedies were not available to Torres. At the evidentiary hearing on this issue, Defendants presented witnesses who testified to the fact that G/Os and the ARB had not received grievance appeals from Torres. That may be, but it misses the mark. Torres alleges that C/Os interfered with his mail/grievances after he put documents into the prison mail system and before they arrived to their intended recipients. (Doc. 32-2, p. 61, 63-64, 128; 195*).* Testimony from the intended recipients that they did not receive things from Torres does not rebut the inference that Torres sent them in the first place. It is particularly noteworthy that nobody who would have placed

Torres's grievances and grievance appeals into the prison mail system testified. Because the record in this case contains more than enough evidence to permit an inference of interference with Torres's access to the grievance process, and because Defendants did not offer sufficient evidence to rebut that inference, the Court denies Defendants' Motion for Summary Judgment.

Finally, the Court notes that in one of his grievances alleging interference with his mail, Torres requested a mail log so that he could tell when his mail was processed. (Doc. 32-2, p. 61). Torres's request echoes the Seventh Circuit's suggestion in *Dole v. Chandler* that a receipt system for prison mail would minimize the possibility that inmates might falsely claim to have mailed documents to the ARB. *See Dole*, 438 F.3d at 812. The Seventh Circuit made this suggestion in response to a mishandled ARB appeal at Menard. *Id*. The suggestion made sense then and it makes sense now. If Torres (and other inmates) were issued receipts for documents they mailed as a part of the grievance process, the issue of exhaustion would be resolved more efficiently for all parties.

## CONCLUSION

For the reasons outlined above, the Court **DENIES** Defendants' Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies. The Court will enter a merits scheduling order in due course.

**IT IS SO ORDERED.**

**DATED: September 22, 2026.**

Digitally signed by Judge Sison
Date: 2026.09.22 14:41:02 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**